IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| GESPA Nicaragua, S.A. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Cause No. 3:17-cv-00306-PRM |
| | § | |
| Inabata Europe GmbH, | § | |
| Recom AG | § | |
| Flextronics International USA, Inc., | § | |
| Flextronics Automotive USA, LLC, and | § | |
| MKG GmbH Montagebeau Karl Gobel, | § | |
| | § | |
| Defendants. | § | |

**DEFENDANT RECOM AG'S MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT UNDER FRCP 12(b)(1), (2), (3) and 12(b)(6)**

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT...........................................................................................2

STATEMENT OF THE CASE .........................................................................................4

ARGUMENT AND AUTHORITY ...................................................................................5

I.     THE AMENDED COMPLAINT VIOLATES RULE CV-7(b) OF THIS COURT'S LOCAL CIVIL RULES, AND THEREFORE SHOULD BE STRICKEN………………5

II.    THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER THIS CASE, AND IT SHOULD BE DISMISSED, PURSUANT TO RULE 12(b)(1)……………........7

III.   THIS COURT LACKS PERSONAL JURISDICTION OVER RECOM, AND THEREFORE THE AMENDED COMPLAINT SHOULD BE DISMISSED, PURSUANT TO RULE 12(b)(2)………............................................................................8

A.  GESPA HAS NOT MET ITS BURDEN OF SHOWING MINIMUM CONTACTS...10

1.  General Jurisdiction is lacking because RECOM is Incorporated and Headquartered in Dusseldorf Germany……………………………………………10

2.  There is no Specific Jurisdiction Because RECOM did not Establish Any Purposeful Contacts to Texas, and all Claims in this Case arise From a Contract Executed and Performed Outside of the United States…………………………….10

IV.   THE COURT SHOULD DISMISS COUNTS I AND II AGAINST RECOM, FOR FAILURE TO STATE A CLAIM, PURSUANT TO RULE 12(b)(6)…………………...12

V.    RECOM ALSO MOVES TO DISMISS THE COMPLAINT UNDER THE DOCTRINE OF *FORUM NON CONVENIENS*……………………………………………13

CONCLUSION…………………………………………………………………………...14

i

## <u>TABLE OF AUTHORITIES</u>

Page(s)

CASES

*Bell Atlantic Corp v. Twombly*, 550 U.S. 544 (2007) ............................................................11

*Bristol-Myers Squibb Co. v. Superior Court of California,*
  137 S.Ct. 1773 (2017) ...................................................................................... 3

*Clemens v. McNamee,*
  615 F.3d 374 (5th Cir. 2010) ............................................................................ 9

*Chick Kam Choo v. Exxon Corp.,*
  764 F.2d 118 (5th Cir. 1985) ..............................................................................2, 8

*Conley v. Gibson,*
  355 U.S. 41 (1957) .............................................................................................11

*Daimler AG v. Bauman,*
  134 S.Ct. 746 (2014) ..........................................................................................9

*Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.,*
  565 F.3d 200 (5th Cir. 2009) ........................................................................... 12

*Guidry v. United States Tobacco Co.,*
  188 F.3d 619 (5th Cir, 1999) ........................................................................... 12

*International Shoe Co. v. Washington,*
  326 U.S. 310 (1945) .........................................................................................11

*Lefevre v. Connextions, Inc*, No. 3:13-CV-1780-D, 2014 WL 1390861 (N.D. Tex. 2014)..............6

*Moncrief Oil Int'l, Inc. v. OAO Gazprom,*
  481 F.3d 309 (5th Cir. 2007) ............................................................................11

*Monkton Ins. Servs., Ltd. v. Ritter,*
  768 F.3d 429 (5th Cir. 2014) ..............................................................................9,10

*Orellana v. International Medical Group, Inc.*
  EP-18-CV-23-PRM, 2018 WL 674289, *4 (W.D. Tex. 2018).............................................7

*Pervasive Software, Inc. v. Lexware GmbH & Co. KG,*
  688 F.3d 214 (5th Cir. 2012) .............................................................................9

*Ramming v. U. S.,*
  281 F.3d 158 (5th Cir. 2001) .......................................................................... 11

*Stiftung v. Plains Mktg, L.P.*, 603 F.3d 295, 297 (5th Cir. 2010)......................................... 7

*Thomas v. Kadish,*
  748 F.2d 276 (5th Cir. 1984) .......................................................................... 11

OTHER AUTHORITIES

Fed. R. Civ. P. 9(b) .................................................................................................................. 4,12, 13

Fed. R. Civ. P. 12(b)(2) ...........................................................................................................passim

Fed. R. Civ. P. 12(b)(1),(2), and (3)………………………………………………………………..2

Rule 12(b)(6) ...........................................................................................................................passim

RECOM AG ("RECOM"), moves this Court to dismiss the action filed by Plaintiff GESPA Nicaragua, S.A. ("GESPA"), against RECOM AG, pursuant to Fed. R. Civ. P. 12(b)(1),(2), and (3), and alternatively to dismiss counts I, and II, for failure to state a claim, pursuant to Rule 12 (b)(6). Preliminarily, however, the Amended Complaint was filed in violation of Local Civil Rule CV-7(b), and therefore should be stricken.

## PRELIMINARY STATEMENT

GESPA alleges two bases of subject matter jurisdiction, namely diversity, and federal question.  Neither provides a basis of subject matter jurisdiction over RECOM.  As will be discussed *infra*, GESPA is a foreign corporation, as it admitted in its Verified  Complaint ¶¶6-8. When its jurisdiction was challenged, it morphed into a citizen of Louisiana.  This Circuit has held that for the purposes of diversity jurisdiction, a corporation is a citizen of the place in which it is incorporated, and also where it has its principal place of business.  *Chick Kam Choo v. Exxon Corp*. 764 F.2d 118 (5th Cir. 1985).  GESPA is a citizen of Nicaragua and has its principal place of business in Nicaragua.  Thus, there is no complete diversity in this case.

In an attempt to circumvent dismissal on lack of diversity grounds, GESPA has now claimed that its original Verified Complaint misrepresented its citizenship, and now, through some sleight of hand, it is a citizen of Louisiana, because one of what could be many, even hundreds of its shareholders is a citizen of Louisiana. It asks the Court to adopt the premise that its corporate structure allows it to be citizen of any place in which any one of its shareholders is a citizen. This is based upon an opinion by a local Nicaraguan attorney, that he believes it to be so.  That opinion, which even the Nicaraguan attorney admits is at variance with the law of other South American and foreign corporate law is insufficient to bolster subject matter jurisdiction.

2

RECOM AG is a corporation organized under the laws of Germany, with its offices in Dusseldorf, Germany.  It maintains no offices or personnel in Texas, or, in fact, anywhere in the United States.  GESPA erroneously asserts that RECOM has an office in San Francisco, California.  (Amended Complaint ¶ 33).  That is incorrect.  It has no presence or office in the United States.  (See Decl. of Aram Spartalian, Exhibit A).  GESPA alleges no contacts with RECOM in Texas, no meetings with RECOM in Texas, no communication between them in Texas, or that RECOM has any presence in Texas.  RECOM had no contract with FLEX, the only Texas entity involved in this case.  Therefore, it is clear that Texas lacks general personal jurisdiction over RECOM, as it is a foreign corporation headquartered abroad. Only specific allegations that RECOM had substantial and purposeful contacts with Texas that gave rise to this controversy can be a predicate for jurisdiction. *Bristol-Myers Squibb Co. V. Superior Court of California.* 137 S. Ct 1773, 1783 (2017).  There are no such allegations.

Exercising jurisdiction over RECOM in Texas would not be in keeping with the concept of fair play and substantial justice.  Texas has no interest in this dispute between a German (Inabata) and Nicaraguan (GESPA) parties, regarding solar panels delivered to Nicaragua.  This is especially true since the very contract between GESPA and Inabata, previously a co-defendant, expressly chose the laws and jurisdiction of Germany to resolve any dispute.  In fact, Inabata has commenced an action in Germany against GESPA, in which all of the parties are participants, and which, should, in and of itself, require that this case be dismissed.  It would be a substantial burden to RECOM to litigate in a foreign country where it has no presence, and dismissal would prevent the possibility of conflicting judgments, by honoring the parties' forum selection clause.

The fraud allegations in Counts I and II lack merit. The complaint fails to observe the

heightened pleading standard for fraud cases in Rule 9(b), since, even now, it completely lacks any specifics concerning any fraudulent statements made by RECOM, where these alleged statements were made, to whom, and why they were fraudulent.  Vague accusations, lumping all of the defendants together, fall far short Rule 9(b)'s requirements. This is a contract dispute between GESPA and the defendants, principally Inabata, concerning the sale of solar panels.  And, while it has been said that "the best defense is a good offense," it appears that GESPA is using whatever it can to avoid paying for solar panels which comported with the requirements of the contract.  Merely alleging that the defendants trafficked in counterfeit panels in one sale to GESPA, outside the forum state, which is disputed, would not constitute a basis for jurisdiction as to RECOM in Texas.

Therefore, the Court should grant RECOM's motion to dismiss for lack of personal jurisdiction, and failure to meet the heightened pleading standard of Rule 9(b), and allow the matter to move forward in Germany, which the parties chose as the exclusive forum to resolve contractual disputes.

## STATEMENT OF THE CASE

RECOM AG is a German company, headquartered in Dusseldorf, Germany.  (Declaration of Aram Spartalian, Exhibit A).  It was established in 2014, and it is an international seller of solar panels. In September 2016, GESPA executed a Sale Agreement with Inabata, wherein Inabata agreed to procure 46,000 Mono 270W photovoltaic modules ("solar panels") to be delivered to GESPA in Nicaragua. As previously noted, that agreement was to be governed by the laws of Germany.  In November 2016, Inabata and RECOM entered an agreement to the effect that RECOM would act as an intermediary for the purchase of solar panels from Flextronics for

4

delivery to Nicaragua, and that the panels would bear the registered RECOM Trade Mark No. 012482832.  That agreement, also chose German law, and required that any dispute be adjudicated in Dusseldorf, Germany. Thereafter, RECOM, in Germany, offered 46,296 270 Wp Mono RCM-270-6MB-BB panels to Inabata, through Flextronics, in satisfaction of Inabata's contract with GESPA, for delivery in Nicaragua.  GESPA accepted the offer. Although the solar panels were stored in the United States at that time, the contract does not mention Texas.  No one from RECOM traveled to the United States or directed any communication to GESPA in or from the United States in connection with this sale. In December 2016, Flextronics shipped 46,000 solar panels from its warehouse in El Paso, Texas, to Nicaragua.  GESPA alleges that the defendants conspired to switch the RECOM panels, and instead shipped solar panels from SunEdison.  GESPA alleges that these solar panels were acquired, as orphan panels, as a result of the SunEdison bankruptcy, and then they were re-labeled and "passed off as thought they were" the RECOM panels specified in the Purchase Agreement between GESPA and Inabata.

GESPA does not allege that any defendant, other than Flextronics had any connection to Texas, nor does it specify the timing, speaker, or contents of any alleged misrepresentation by any of the defendants to GESPA concerning the panels. None of the conduct alleged against RECOM took place in Texas.

## ARGUMENT

**I.    The Amended Complaint violates Rule CV-7(b) of this Court's Local Civil Rules, and therefore should be stricken.**

Rule CV 7(b) of this Court's Local Rules provides that:

"When a motion for leave to file a . . .pleading . . .is required, an executed copy of the proposed pleading . . .shall be filed as an exhibit to the motion for leave."

GESPA is in violation of this Rule.  Although GESPA filed a Proposed Amended Complaint, (Dkt. No. 72, Exhibit 3), which was before the Court for review on the Motion for Leave to File an Amended Complaint, once leave was granted (Dkt. 75), the actual Amended Complaint which was filed differed markedly from the Proposed Amended Complaint.  Among other things, it added an additional defendant in its RICO claim, and further dramatically expanded from the 71 paragraphs in the 19 page Proposed Amended Complaint to 117 paragraphs in the 30-page filed Amended Complaint. While GESPA has averred that the defendants engaged in a "bait and switch" scheme, GESPA should examine its own house first.  Its executed Proposed Amended Complaint proffered that it was the actual First Amended Complaint which it sought to file.  It is not.  Had GESPA determined after it filed its motion for leave to amend that there were other claims its sought to present, not raised in the proposed First Amended Complaint, it had proper procedures it could have sought.  However, slipping in a completely different Amended Complaint is not one of them.  For that reason alone, the Amended Complaint should be stricken.

The Northern District of Texas had occasion to thoroughly review this issue, although its Rule differed slightly from this district in *Lefevre v. Connextions, Inc*, No. 3:13-CV-1780-D, 2014 WL 1390861 (N.D. Tex. 2014).  There, the Court noted the importance of a plaintiff providing the actual amended pleading in its motion for leave to amend, as it gives both the defendants and the Court an opportunity to realistically evaluate the pleading.  It concluded that allowing a movant to file an amended pleading that differs from the proposed amended pleading "would upset an important reliance interest" on both the defendants and the Court.  We note that generally when an amended pleading is filed as an attachment to a motion for leave, in the event the motion is granted,

6

generally the court clerk then files the proposed amended pleading, without an actual re-filing of the amended document.  For whatever reason, that did not occur here, and this Court required GESPA to file its Amended Complaint by April 30, 2018.  However, that unusual circumstance does not have any bearing on the issue here, and this Court should strike the Amended Complaint.

**II.     This Court lacks subject matter jurisdiction over this case, and it should be dismissed, pursuant to Rule 12(b)(1).**

Other than diversity, the two other alleged bases of federal question jurisdiction do not relate to RECOM.  In fact, the allegations contained in ¶14 of the Amended Complaint regarding a trademark claim, are speculative at best, and simply raise a question, rather than stating a claim. Moreover, at the time of this transaction, the trademark was valid and RECOM was authorized to use it.  (Application and Certificate, Exhibit B).  If anything, it relates a claim of a third party, not a part of this litigation.  In any event, that claim arises, at best, under German law, where the entity providing the letter is located, and the trademark apparently registered. That falls far short of raising federal question jurisdiction against RECOM.

The other claimed basis of jurisdiction, a violation of 18 U.S.C. ¶1001, is asserted against FLEX, and not RECOM.  Therefore, it is diversity that is the sole jurisdictional predicate for jurisdiction against RECOM.  As this Court has recently observed in  *Orellana v. International Medical Group, Inc.,* "§1332 requires 'complete diversity of citizenship', and a court 'cannot exercise diversity jurisdiction if one of the plaintiffs shares the same citizenship as any one of the defendants.'" EP-18-CV-23-PRM, 2018 WL 674289, *4 (W.D. Tex. 2018) (citing *Stiftung v. Plains Mktg*, *L.P.*, 603 F.3d 295, 297 (5th Cir. 2010)).  As previously noted, this Circuit has held that for the purpose of diversity jurisdiction, a corporation is a citizen of the place in which it is

incorporated, and also where it has its principal place of business. *Chick Kam Choo v. Exxon Corp*. 764 F.2d 118 (5th Cir. 1985). GESPA is a citizen of Nicaragua and it has its principal place of business in Nicaragua.

However, once that was argued by MKG in its motion to dismiss, now GESPA is claiming it is a citizen of Louisiana. Try as they might, GESPA cannot jump to hurdle of establishing complete diversity in this case. It has changed its claimed citizenship between the Verified Complaint and the Amended Verified Complaint, from Nicaragua to Louisiana. That assertion is based upon a novel claim that one of its shareholders is a citizen of Louisiana, and that, under some previous unheard of interpretation of Nicaraguan law, contrary to the law of all other South American and foreign jurisdictions, that is sufficient for diversity jurisdiction here. The entire argument is supported by a declaration of an unknown Nicaraguan attorney, rather than either an expert on Nicaraguan law, or a government official, and GESPA asks this Court to accept this unique theory that for diversity purposes, a Nicaraguan S.A. can be a citizen of anywhere one of its shareholders resides. That flies in the face of general principles of corporate law, as well as the law of perhaps every country, with the claimed exception of Nicaragua.

28 U.S.C. § 1332 (a)(2) applies here. It provides that where there is a sole alien plaintiff, like GESPA on one side of the case, all of the defendants need to be United States citizens. That is not the case here, because RECOM and MKG are foreign corporations. Thus, on its face, there is no complete diversity in this case.

### III. This Court lacks personal jurisdiction over RECOM, and therefore the Amended Complaint should be dismissed, pursuant to Rule 12(b)(2).

Lack of personal jurisdiction is a well-respected ground to permit a defendant to move to

dismiss a complaint, pursuant to Rule 12(b)(2).  A non-resident defendant is not subject to personal jurisdiction in any state, unless "(1) the long-arm statute of the forum state creates personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction is consistent with due process guarantees of the United States Constitution."  *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010).  Since Texas' long-arm statute extends to the limits of due process, the issue here is whether exercising personal jurisdiction over RECOM complies with constitutional due process requirements. *Pervasive Software, Inc. v. Lexware GmbH & Co, KG*, 688 F.3d 214, 220 (5th Cir. 2012).  Plaintiff has the initial burden of making out a prima facie case that a defendant purposefully established "minimum contacts" with Texas.  *Clemens*, 615 F. 3d at 378.  In the event plaintiff does so, the burden then shifts to the defendant to show that exercising jurisdiction would be inconsistent with "traditional notions of fair play and substantial justice." *Id.*

Two types of contacts may satisfy the "minimum contacts" requirement; general and specific.  *Clemens, Id.* at 378.  General jurisdiction arises when the defendant is "essentially at home in the forum State," and may be subject to any claims arising within or outside the forum. *Monkton Ins. Serv. Ltd. v. Ritter*, 768 F. 3d 429, 432 (5th Cir. 2014), (quoting *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014)).  Where a corporation is incorporated and has its principal place of business is where it is "at home," for the purposes of establishing general jurisdiction, and [i]t is, therefore, incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business."  *Id*.  On the other hand, specific jurisdiction arises when a foreign defendant has "purposefully directed his activities at residents in the forum.  and the litigation results from injuries that are claimed to arise out of or relate to those activities.  *Id.*

**A.   GESPA has not met its burden of showing minimum contacts.**

   1.   General Jurisdiction is lacking because RECOM is Incorporated and
        Headquartered in Dusseldorf, Germany

RECOM is incorporated and has its headquarters in Dusseldorf Germany, and GESPA has

not pled facts showing that it had "continuous and systematic contacts" sufficient to render it "at

home" in Texas.  In fact, RECOM has no presence of any kind in Texas, and therefore, there is no

general personal jurisdiction over it in Texas.  See *Monkton*, 768 F.3d at 432.

   2.   There is no Specific Jurisdiction Because RECOM did not Establish
        Any Purposeful Contacts to Texas, and all Claims in this Case arise
        From a Contract Executed and Performed Outside of the United States

There is no allegation that RECOM purposefully directed any contacts to Texas. Here,

GESPA, a Nicaraguan company contracted with Inabata, a German company, in Denmark, for

delivery of solar panels to Nicaragua, for use in Nicaragua.  There is no allegation that GESPA

communicated or met with RECOM in Texas.  RECOM did not enter the United States or

communicate with anyone in the United States**.** The alleged imposter panels were manufactured

outside of the United States.  Therefore, there is no specific jurisdiction, because RECOM does

not have minimum contacts with Texas, as it does not have a physical presence in the state; it did

not conduct business in the Texas; and the underlying contract here was signed in Denmark and

called for performance in Nicaragua.

The only link between RECOM and Texas is that RECOM brokered the procurement of

solar panels from Flextronics, a Texas corporation, for shipment to GESPA in Nicaragua. Neither

GESPA nor RECOM were part of that procurement contract. GESPA was not part of that

procurement contract. No injury or damage is alleged by Flextronics, the only entity with a

presence in Texas.

The "minimum contacts" analysis requires purposeful and substantial contacts by a defendant with the forum state. *International Shoe Co, v. Washington,* 326 U.S. 310, 319 (1945). Merely contracting with a resident of the forum state does not establish minimum contacts there. *Moncrief Oil Int'l Inc. v. OAO Gazprom,* 481 F.3d 309, 311 (5th Cir. 2009). As the court noted in *Thomas v. Kadish*, 748 F. 2d 276, 282 (5th Cir. 1984), personal jurisdiction over one defendant is not sufficient to grant personal jurisdiction over an alleged non-resident co-conspirator. We note, particularly, that the plaintiff, GESPA is itself a non-resident party, and there has been no harm to any Texas entity.

The brokering for the purchase of solar panels to be delivered in Nicaragua is not a sufficient contact to establish personal jurisdiction over RECOM in Texas, especially being that the panels were manufactured outside of the United States, were merely stored in Texas, and were for shipment to Nicaragua. Nor are the few emails sent by RECOM personnel in Europe to others outside the United States, relating to this case.

## IV.   The Court should dismiss Counts I and II against RECOM, for failure to state a claim, pursuant to Rule 12(b)(6).

Where a complaint failed to allege sufficient facts to show that the plaintiff is entitled to relief, a motion under Rule 12(b)(6) is appropriate. *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001). Although the facts of the complaint must be taken as true, where, as here, plaintiff can prove no set of facts which entitles it to relief, the motion should be granted. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Thus, to survive a motion to dismiss, the complaint must contain that raise a legitimate, and not a speculative right to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 555 (2007).

Rule 9(b) requires a heightened pleading standard which supersedes the general notice pleading requirement. The plaintiff must specify the statements contended to be fraudulent, identify the speaker, and state when and where the statements were made, and why they are fraudulent. *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp*, 565 F.3d 200, 207 (5th Cir. 2009). This heightened statement applies to counts I and II.

The only statements made by GESPA alleging fraudulent conduct, are contained in ¶¶ 62-82, of the Amended Complaint.  But even there, the allegations are that the "defendants, collectively, made false representations to plaintiff," and that "they should have known that the representations were false." These are legal conclusions, and do not serve to meet the heightened pleading standard required by Rule 9(b).  GESPA alleges in its preface, that from outside the United States, the "defendants transmitted communications to Plaintiff (outside the United States), continuing to represent the panels as premium quality, and in ¶12 of the Amended Complaint, they claim that in multiple emails, phone calls and meetings, the defendants continued these deceptive presentations, which took place outside of the United States.  Other than emails from outside the United States, no specific defendant is mentioned, and no specifics of these alleged meetings, etc., are set forth. These conclusory allegations are not facts and are insufficient to prevent a motion to dismiss. *Guidry v. United States Tobacco,* 188 F.3d 619, 631-2 (5th Cir. 1999).

Although GESPA alleges in Paragraph 12 of the Amended Complaint that it has now satisfied the requirement of the who, what, and when requirements of Rule 9(b), that is clearly not the case.  GESPA lumps all of the defendants in together, and has not specified who did what, and when the alleged misrepresentations were made. Therefore, counts I and II should be dismissed,

for failure to meet the heightened pleading requirements of Rule 9(b).

**V.   RECOM also moves to dismiss the complaint under the doctrine of *forum non conveniens*.**

RECOM also moves to dismiss the complaint, pursuant to Rule 12(b)(3) on the grounds of forum non conveniens.  As previously noted the seminal contract in this case, that is between GESPA and Inabata, expressly provided that the parties agree that the law of Germany should apply, and the parties agreed to voluntarily submit to its jurisdiction and venue, as the **exclusive** place for resolution of any and all disputes.  Moreover, the agreement between RECOM and Inabata contained an integration clause and similarly chose the German courts, in Dusselforf, as the place for resolution of all and disputes

On November 24, 2017, shortly after GESPA filed this action on October 2, 2017,  an action in the District Court of Dusseldorf was filed, involving these same parties.

On April 19, 2018, this Court dismissed the action against Inabata, based upon the exclusivity of its forum selection clause. GESPA is a party to both actions in Texas and Germany. What is particularly interesting, in the German proceeding, GESPA has asked for an evidentiary examination on the issue of *whether* the panels comply with contractual terms.  Clearly, GESPA filed this action, alleging fraud, among other things, prior to knowing whether it had been damaged at all.  If the panels are compliant, there is no cause of action.  This alone demonstrates that these actions are an attempt by GESPA to delay or defer payment for the solar panels it received. Obviously, having two cases pending in different countries, involving the same parties is problematic, as it can lead to different results. This Court has already dismissed Inabata, in part, on these grounds.  Although RECOM is in a different position due to the fact that it did not have

a contractual relationship with GESPA, much of that same law applies to dismiss this case and will not be repeated here.

However, now that Inabata is out of the case, RECOM's ability to effectively defend this case is seriously compromised, since its involvement in the case is through Inabata who is now not subject to process in this case, either as a party or as a witness.  The only venue where RECOM can effectively defend against these allegations is in Germany.

## CONCLUSION

For all of the above reasons, RECOM AG respectfully requests that this Court grant RECOM AG's Motion to Dismiss, and that Plaintiff's Amended Complaint be dismissed in its entirety, with prejudice.

Respectfully submitted,

**MOSS LEGAL GROUP, PLLC**
5845 Cromo Dr., Suite 2
El Paso, Texas  79912
(915) 703-7307
(915) 703-7618 Telecopier

By:     */s/Priscilla M. Castillo*
        **PRISCILLA M. CASTILLO**
        State Bar No. 24076531
        priscilla@mosslegalsolutions.com

        And

By:     */s/Susan C. Cassell*
        **SUSAN C. CASSELL**
        (Admitted Pro Hac Vice Motion)
        New Jersey Bar No. 006831985
        Cassell.susan@gmail.com
        419 Lucille Court
        Ridgewood, New Jersey 07450
        (201) 445-3894
        *Attorneys for Defendant Recom AG*

14

## **CERTIFICATE OF SERVICE**

      I hereby certify that on May 11, 2018, I electronically filed the foregoing document with the Clerk of Court using the Western District of Texas CM/ECF system which will send notification of such filing to all attorneys of record who are registered users of the CM/ECF system.


                                   */s/Priscilla M. Castillo*_____
                                   **PRISCILLA M. CASTILLO**

**EXHIBIT A**

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

GESPA Nicaragua, S.A.

      Plaintiff.

V.

Inabata Europe GmbH,
RECOM AG, et als.,

      Defendants

Case No. 3:17-cv-00306-PRM

## DECLARATION OF ARAM SPARTALIAN IN SUPPORT OF RECOM AG's MOTION TO DISMISS COMPLAINT

Pursuant to 28 U.S.C. § 1746, I, Aram Spartalian, hereby declare and state the following:

1.  I am an attorney for RECOM AG, and I make this declaration based upon my knowledge of the files relating to this case.

2.  RECOM AG is a German corporation, with its headquarters in Dusseldorf, Germany. It was pre-incorporated in Germany in 2013, and fully able to transact business as of September 2014.

3.  RECOM AG has no office in the United States, nor does it have any employees in the United States.  To the extent that GESPA asserts in its Complaint that RECOM AG has an office in San Francisco California, that assertion is incorrect.

4.  The agreement between Inabata and RECOM AG was executed in Germany, not in the United States.

5.   No employees of RECOM AG re-labeled solar panels in Texas, or met with employees of Flextronics in Texas.

I, Aram Spartalian, declare under the penalty of perjury that the foregoing is true and correct.

Executed on March 8, 2018

Aram Spartalian

**EXHIBIT B**

## Application Form (Co- license)

### 1. Main License Holder

**Client No.: 85231**

| | |
|---|---|
| Full name of company : SunEdison Products Singapore Pte. Ltd. | Main Certificate No. : Z2 16 04 85231 043 |
| Contact person: Dr. Jin Wu | Type of Certified Equipment: Photovoltaic Module |
| Address: 80 Robinson Road #02-00, Singapore 068898 | Type Designation: |

### 2. Co-license Holder

**Client No.: ............**

| | |
|---|---|
| Full name of company: RECOM AG | VAT No.: 815520953 |
| Contact person: Vyron Efstathidis or Maria Skaltsi | Type of Certified Equipment: Photovoltaic Module |
| Address: Langenbrahm Str. Nr.1 45133, Essen, Germany | New Type Designation: |
| | Tradename /-mark: |

### 3. If the models are more than one, please fill as follows:

(if space not sufficient please use separate sheet)

| Main Certificate Model | is technically identical to | Co-license Model |
|---|---|---|
| SE-FxxxYMZ-3W (where xxx is the power bin range from 285-345W, Y can be either B or E, Z can be either C or D, W can be either 7 or 9) 72-cell modules | is technically identical to | RCM-xxx-6MA (where xxx is the power bin range xxx=285-345, A can be 72-cell module, M for mono) |
| SE-RxxxYMZ-3W (where xxx is the power bin range from 315-370W, Y can be either B or E, Z can be either C or D, W can be either 7 or 9) 72-cell modules | is technically identical to | RCM-xxx-6MA (where xxx is the power bin range xxx=315-370, A can be 72-cell module, M for mono) |
| SE-FxxxYMZ-38 (where xxx is the power bin range from 245-280W, Y can be either C, F, G or K, Z can be either C or D) 60-cell modules | is technically identical to | RCM-xxx-6MB (where xxx is the power bin range xxx=245-280, B can be 60-cell module, M for mono) |
| SE-RxxxYMZ-38 (where xxx is the power bin range from 260-305W, Y can be either C, F, G or K, Z can be either C or D) 60-cell modules | is technically identical to | RCM-xxx-6MB (where xxx is the power bin range xxx=260-305, B can be 60-cell module, M for mono) |

### 4.

The main license holder:
- Confirms that the previously certified product and the product mentioned on the rating label above are identical on all safety relevant information printed in the user manual or on the product.
- Agrees with issuing the co-license.
- Makes an agreement with the co-license holder that, in case the main license expires or is being cancelled, the co-license may also been withdrawn.
- Will forward the original co-license to the co-license holder and keep the copy as reference.
- Grants TÜV SÜD Product Service GmbH the right to give the co-license holder access to the related license sheet(s), the product, test report(s) and the factory inspection summary sheet(s).

The main license holder exempts TÜV SÜD Product Service GmbH from any claims that the co-license holder should make in case of cancellation / withdrawal of the main license.

The co-license holder (applicant) accepts the "Standard Terms and Conditions", and "Testing and Certification Regulations" conditions of the certification agreement of TÜV SÜD Product Service GmbH and TÜV SÜD by signature.

A German user manual valid for the product mentioned on section 3 above is a precondition for issuing the co-license.

**Application fee& first annual fee paid by:**
1. Main License holder ☐   or   2. Co-license holder ☒   or   3. *Other☐

RECOM AG
Langenbrahm Str. Nr. 1
45133 Essen, Germany
T: 00 49 201 86979094 - F: 00 49 201 86979095
HRB 25996, VAT ID: DE815520953
DP IN: DE910272641........6
TÜV SÜD Greater China

Title: Application Form (Co-license)
Revision: 00
Effective: 2013-06-17
Page   1 of 1

ID-Number: TPS_GCN_F_00.02E
Author: Jason Mak

Developed: 2013-05-20

Phone: +852 27885149
Fax:    +852 27792990
jason.mak@tuv-sud.hk

SunEdison Legal

(Company stamp and signature)
RECOM AG
Langenbrahm Str. Nr 1
45133 Essen Germany
T: 00 49 201 88979094 - F: 00 49 201 88979095
HRB 25996, VAT ID: DE815520953
(Company stamp and signature) 795412736

**Following annual fee paid by:**
1. Main License holder ☐   or   2. Co-license holder ☒   or   3. *Other☐

Place and date: 28ᵗʰ NOV 2016.

Place and date: 17/10/16

(Mr. RAJARAM NAGARAJAN)

_____   _____
Company stamp and signature of main license holder   Company stamp and signature of co-license holder

DIRECTOR SOLAR MATERIALS SUPPLY CHAIN/
MEMBER BOARD OF DIRECTORS SUNEDISON PRODUCTS SINGAPORE PTE LTD.

*Or it can be fill-in the resprensentative company name if it have authorization letter from the main license holder and representative company.





Product Service

# C E R T I F I C A T E

**No.  Z2 16 12 97650 001**

**Holder of Certificate:**   **RECOM AG**
Langenbrahm Str. 1
45133 Essen
GERMANY

**Certification Mark:**



**Product:**   **Crystalline Silicon Terrestrial Photovoltaic (PV) Modules**
**Mono-Crystalline Silicon Photovoltaic Module**

The product was tested on a voluntary basis and complies with the essential requirements. The certification mark shown above can be affixed on the product. It is not permitted to alter the certification mark in any way. In addition the certification holder must not transfer the certificate to third parties. See also notes overleaf.

**Test report no.:**   701261606401-00

**Valid until:**   2021-04-17



04052768559333

**Date,**   2016-12-20     ( Zhulin Zhang )
Page 1 of 2



A1 / 04.11

ZERTIFIKAT ◆ CERTIFICATE ◆ СЕРТИФИКАТ ◆ 证书 ◆ CERTIFICADO ◆ CERTIFICAT



Product Service

## CERTIFICATE
## No.   Z2 16 12 97650 001

**Model(s):**

**RCM-xxx-6MA**
**(where xxx is the power bin range xxx=285-345 in step of 5W, A can be 72-cell module, M for mono)**
**RCM-xxx-6MB**
**(where xxx is the power bin range xxx=245-280 in step of 5W, B can be 60-cell module, M for mono)**
**RCM-xxx-6MA-R**
**(where xxx is the power bin range xxx=315-370 in step of 5W, A can be 72-cell module, M for mono, R for PREC cells)**
**RCM-xxx-6MB-R**
**(where xxx is the power bin range xxx=260-305 in step of 5W, B can be 60-cell module, M for mono, R for PREC cells)**

**Parameters:**

Rated Output Power
at STC:

285 W, 290 W, 295 W, 300 W, 305 W, 310 W, 315 W, 320 W, 325 W, 330 W, 335 W, 340 W, 345 W, 245 W, 250 W, 255 W, 260 W, 265 W, 270 W, 275 W, 280 W, 315 W, 320 W, 325 W, 330 W, 335 W, 340 W, 345 W, 350 W, 355 W, 360 W, 365 W, 370 W, 260 W, 265 W, 270 W, 275 W, 280 W, 285 W, 290 W, 295 W, 300 W, 305 W.

Fire Safety Class: Class C
Application Class: Class A
Max. system voltage: 1000V DC
Test Laboratory: Renewable Energy Test Center.
(RETC,LLC)

46457 Landing Parkway Fremont CA 94538 USA.
Construction: Framed, with Junction box, cable and connector.

**Tested**
**according to:**

IEC 61215(ed.2)
EN 61215:2005
IEC 61730-1(ed.1);am1;am2
EN 61730-1:2007/A2:2013
IEC 61730-2(ed.1);am1
EN 61730-2:2007/A1:2012

**Production**
**Facility(ies):**

75179



Page 2 of 2

TÜV SÜD Product Service GmbH · Zertifizierstelle · Ridlerstraße 65 · 80339 München · Germany

TÜV®