**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| GESPA NICARAGUA, S.A. | § § § | CIVIL ACTION NO. 3:17-CV-00306 PRM |
| *Plaintiff,* | § § | |
| v. | § § | |
| INABATA EUROPE GMBH; RECOM AG; FLEXTRONICS INTERNATIONAL USA, INC.,; FLEXTRONICS AUTOMOTIVE USA, LLC; and MKG GMBH MONTAGEBAU KARL GOEBEL, | § § § § § § | |
| *Defendants.* | § § § | |

**DEFENDANT, MKG GMBH MONTAGEBAU KARL GOEBEL'S, MOTION TO**
**DISMISS PLAINTIFF'S AMENDED VERIFIED COMPLAINT**
**UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1), (2), (3) AND 12(b)(6)**

# TABLE OF CONTENTS

**I. FACTS** .................................................................................................................. 1

**II. ARGUMENTS AND AUTHORITIES** ................................................................. 3

   A.   Jurisdiction is Required for Adjudication ................................................................. 3

   B.   This Court Lacks Subject Matter Jurisdiction ......................................................... 4

     1. There is No Subject Matter Jurisdiction Arising from a Federal Question Regarding MKG ........... 4

      a). The RICO Counts Are Not Against MKG ..................................................... 5

        i). Count III(A) Is Not Against MKG ....................................................... 5

        ii). Count III(B) Is Not Against MKG and INABATA's Motion to Dismiss was Granted ..... 6

      b). MKG Did Not "Traffic" ............................................................................. 6

      c). The Panels May Not Be Counterfeit ............................................................ 9

     2. There is No Subject Matter Jurisdiction Arising from Diversity in this Case ............... 10

      a). Legal Conclusions are Not Assumed to be Accurate ....................................... 11

      b). *Sociedad Anónima* is an Exotic Creation if Civil Law ................................. 11

      c). Plaintiff is an Alien Whether it is a Corporation or an LLC .............................. 13

   C. This Court Lacks Personal Jurisdiction over MKG ................................................ 15

     1. Plaintiff Must Establish that this Court Has Jurisdiction over MKG ......................... 15

     2. "Communications" from MKG Sent by Unidentified Actor ................................... 17

   D. The Court Should Dismiss Counts I and II Against MKG, for Failure to State a Claim, Pursuant to Rule 12(b)(6) .................................................................................. 17

   E. MKG Also Moves to Dismiss the Amended Complaint under the Doctrine of *Forum Non Conveniens* ........................................................................................... 19

**III. CONCLUSIONS** .................................................................................................. 20

# TABLE OF AUTHORITIES

CASES

*Ashcroft v. Iqbal*

    556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ........................................... 11

*Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*

    571 U.S. 49, 134 S. Ct. 568, 574, 187 L. Ed. 2d 487 (2013) ........................................................ 20

*Barragan v. Gen. Motors LLC*

    112 F. Supp. 3d 544, 548 (W.D. Tex. 2015) ................................................................................ 15

*Bell Atl. Corp. v. Twombly*

    550 U.S. 544, 545, 127 S. Ct. 1955, 1959, 167 L. Ed. 2d 929 (2007) ........................................... 18

*Bonner v. Triple-S Mgmt. Corp.*

    661 F. App'x 820 (5th Cir. 2016), reh'g denied (Oct. 17, 2016) .................................................... 17

*Carter v. Fed. Bureau of Prisons,*

    579 F. Supp. 2d 798, 801 (W.D. Tex. 2008) .................................................................................. 4

*Caterpillar Inc. v. Lewis*

    519 U.S. 61, 68 (1996) ................................................................................................................. 15

*Caterpillar Inc. v. Williams*

    482 U.S. 386, 392, 107 S. Ct. 2425, 2429, 96 L. Ed. 2d 318 (1987) .............................................. 5

*Chick Kam Choo v. Exxon Corp.*

    764 F.2d 1148, 1151 (5th Cir. 1985) ........................................................................................... 15

*Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.,*

    565 F.3d 200, 207 (5th Cir. 2009) ............................................................................................... 18

*Hanson v. Denckla,*

    357 U.S. 235, 253 (1958) ............................................................................................................. 16

*Moran v. Kingdom of Saudi Arabia,*

    27 F.3d 169, 172 (5th Cir. 1994) ................................................................................................... 4

*People of Puerto Rico v. Russell & Co., Sucesores S. En. C.*

    288 U.S. 476, 53 S. Ct. 447, 77 L. Ed. 903 (1933) ...................................................................... 11

*Piccari v. GTLO Prods., LLC*

    115 F. Supp. 3d 509 (E.D. Pa. 2015) ............................................................................................. 9

*Ramming v. United States*
    281 F.3d 158, 161 (5th Cir. 2001) ............................................................................... 18

*Ruhrgas AG v. Marathon Oil Co.*
    526 U.S. 574, 577 (1999)............................................................................................ 4

*Stuart v. Spademan*
    772 F.2d 1185, 1192 (5th Cir. 1985) .......................................................................... 15

*Wilson v. Belin*
    20 F.3d 644, 648 (5th Cir. 1994) ................................................................................ 15

*United States v. Habegger*
    370 F.3d 441, 444 (4th Cir. 2004) .............................................................................. 8

*United States v. Hanafy*
    302 F.3d 485, 487 (5th Cir. 2002) .............................................................................. 7

*United Steelworkers of Am., AFL-CIO v. R. H. Bouligny, Inc.*
    382 U.S. 145, 151, 86 S. Ct. 272, 275, 15 L. Ed. 2d 217 (U.S. 1965) .......................... 11

*White Pearl Inversiones S.A. (Uruguay) v. Cemusa, Inc.*
    647 F.3d 684, 686 (7th Cir. 2011) .............................................................................. 12

Pursuant to Fed. R. Civ. P. 12(b)(1), (2), and (3), Defendant, MKG GMBH MONTAGEBAU KARL GOEBEL, ("MKG") hereby moves to dismiss all claims against it in this case. Alternatively, pursuant to Rule 12(b)(6), MKG moves to dismiss Counts I and II of Plaintiff's First Amended and Verified Complaint, ECF No. 78. In support of its motion, MKG respectfully submits the following memorandum:

## I. FACTS

1.     Plaintiff, GESPA NICARAGUA, S.A., ("GESPA" or "Plaintiff") filed its Original Verified Complaint (ECF No. 1, "Complaint") with this Court on October 2, 2017.

2.     Plaintiff filed its First Amended Verified Complaint and Jury Demand (ECF No. 78, "Amended Complaint") on April 30, 2018.[1]

3.     Five separate defendants are named in the Amended Complaint: Inabata Europe GmbH, ("INABATA"), Recom AG, ("RECOM"), Flextronics International USA, Inc., ("Flextronics International Inc. (California)"), Flextronics Automotive USA, LLC., ("Flextronics Automotive LLC") and MKG.

4.     On March 29, 2018, this Court entered an Order Granting Defendant INABATA's Motion to Dismiss (the "March 29, 2018 Order"). ECF No. 71.

5.     On May 1, 2018, this Court entered a Final Judgment as to INABATA Europe GmbH. ECF No. 79.

6.     MKG is a company with limited liability (*Gesellschaft mit beschraenkter Haftung/GmbH)* duly incorporated in the Federal Republic of Germany.

---

[1] To the extent that co-Defendants argue, in opposition to the Amended Complaint, additional or other grounds than contained herein, MKG adopts same as its own.

7.      MKG's headquarters is located in Oehringen, Baden-Wuerttemberg, Federal Republic of Germany. Declaration and Verification in Support of Defendant, MKG GmbH Montagebau Karl Goebel's, Motion to Dismiss for Lack of Subject Matter Jurisdiction and Lack of Personal Jurisdiction ¶ 3 (the "Schrade Declaration"), ECF No. 31-1, attached hereto as Exhibit 1.

8.      MKG does not now and has never conducted business in the State of Texas. MKG does not direct any advertising activities to the State of Texas and has never done so.  MKG does not now and has never solicited business in the State of Texas. Schrade Declaration ¶4.

9.      MKG does not design products or services specifically for the Texas marketplace. Schrade Declaration ¶5.

10.      MKG does not now and has never had any employees or agents in the State of Texas.  Schrade Declaration ¶6.

11.      MKG does not now and has never had any offices in the State of Texas. Schrade Declaration ¶7.

12.      MKG does not now and has never owned real property in the State of Texas. Schrade Declaration ¶8.

13.      No officer or director of MKG is a citizen, resident or domiciliary of the State of Texas and none own real estate in the State of Texas.  Schrade Declaration ¶9.

14.      All of the alleged acts and omissions of MKG related to this lawsuit took place outside of the State of Texas. See Amended Complaint and Schrade Declaration ¶ 10.

15.      The Amended Complaint alleges that this Court has subject matter jurisdiction over

this action pursuant to 28 U.S.C. §§ 1331-1332, based upon federal question and diversity of citizenship.

16.     According to the Amended Complaint Section II. a) – c)., the federal questions upon which federal question jurisdiction is based, arise under 18 U.S.C. § 1964 (the Racketeer Influenced and Corrupt Organizations Act or RICO), 18 U.S.C. 2320 (Trafficking in Counterfeit Goods or Services) and 18 U.S.C. 1001 (Statements or Entries Generally).  Amended Complaint Section II. a) – c).

17.     The Amended Complaint has four counts.  The only count in the Amended Complaint that alleges a federal question is Count III (RICO § 1962(c)).

18.     In the Amended Complaint, Count I alleges "Fraudulent Misrepresentation," Count II alleges "Conspiracy to Commit Fraud," Count III is "RICO § 1962(c)," and Count IV is "Unjust Enrichment and Breach of Contract."

19.     On April 30, 2016, Plaintiff and MKG executed an Engineering, Procurement and Construction (EPC) Contract for Planning and Construction of the PV Power Plant "Solaris" 12,5 MWp in Puerto Sandino, Nicaragua, which was amended on September 21, 2016 by Amendment No. 001 to the EPC-Contract AGREEMENT AMENDING AND MODIFYING THE General Contractor Contract for the Construction of a 12,5 MWp Photovoltaic Plaint "Solaris" in Puerto Sandino, Nicaragua (the "Amended Contract").  The Amended Contract is attached hereto as Exhibit 2.

## II. ARGUMENT AND AUTHORITIES

A.     **JURISDICTION IS REQUIRED FOR ADJUDICATION**

Without jurisdiction, a federal court has no authority to adjudicate a controversy.

Questions related to jurisdiction are primary.  "Jurisdiction to resolve cases on the merits requires both authority over the category of claim in suit (subject-matter jurisdiction) and authority over the parties (personal jurisdiction), so that the court's decision will bind them."  *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999).  Jurisdiction is so essential, it must be addressed prior to examination of the merits of a case.  "A Fed.R.Civ.P. 12(b)(1) motion for lack of subject matter and personal jurisdiction must be considered by the district court before other challenges 'since the court must find jurisdiction before determining the validity of a claim.'" *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994).  "When a court reviews such a motion, it must first address the jurisdictional challenge before looking to any other challenges contained therein."  *Carter v. Fed. Bureau of Prisons*, 579 F. Supp. 2d 798, 801 (W.D. Tex. 2008).

Questions related to subject matter jurisdiction are of equal importance to those related to personal jurisdiction.  A federal court must have both in order to proceed. "[T]here is no unyielding jurisdictional hierarchy. Customarily, a federal court first resolves doubts about its jurisdiction over the subject matter, but there are circumstances in which a district court appropriately accords priority to a personal jurisdiction inquiry."  *Ruhrgas*, 526 U.S. at 578.

Respectfully, in this case, with regard to MKG, this Court lacks <u>both</u> subject matter jurisdiction <u>and</u> personal jurisdiction.

**B.  <u>THIS COURT LACKS SUBJECT MATTER JURISDICTION</u>**

**1.  There is No Subject Matter Jurisdiction Arising from a <u>Federal Question</u> Regarding MKG**

In the Amended Complaint, Plaintiff states that this Court has subject matter jurisdiction based on both federal question and diversity of citizenship. Amended Complaint ¶ 14-15.  Federal question jurisdiction is not applicable to MKG, however, because the only counts in the Amended Complaint arising from a federal statute or law are not alleged against MKG.  The only federal

question count in the Complaint is Count III, which on its face, does not allege any claims against MKG, only against Defendants Flextronics International Inc. (California) and Flextronics Automotive LLC, (Count III(A)) and INABATA, (Count III(B)).

Plaintiff also makes an allegation arising from federal question under 18 U.S.C. 1001 against only the two Flextronics Defendants, Flextronics International Inc. (California) and Flextronics Automotive LLC. Amended Complaint, ¶ 14 c). This 18 U.S.C. 1001 federal question allegation is apparently related to statements made by the Flextronics Defendants to the United States Customs Office and is not alleged in a separate count of the Amended Complaint and is also not alleged against MKG.

### a) The RICO Counts are Not Against MKG

The relevant text of Count III(A) is as follows: "FLEX is the <u>sole</u> Defendant in this Alternative Cause of Action COUNT III(A)." Amended Complaint ¶ 84. (Underlining in original). The relevant text of Count III(B) is as follows: "INABATA is the <u>sole</u> Defendant in this Alternative COUNT III(B)." Amended Complaint ¶ 96. (Underlining in original).

As stated by the United States Supreme Court, "[t]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Accordingly, there is no federal question jurisdiction as to MKG because no federal question claims have been raised in the Complaint against MKG.

### i) Count III(A) is Not Against MKG

Plaintiff defined the term "FLEX" to include both Flextronics International Inc. (California) and Flextronics Automotive LLC. Therefore, Count III(A) is against both Flextronics

International Inc. (California) and Flextronics Automotive LLC, and only against those two Defendants.  In fact, Plaintiff excludes MKG not only as the prime target of that count, but also excludes MKG from the defined "Enterprise."

For Count III(A), Plaintiff limits the RICO Enterprise to, "Expeditors, and their affiliates." Amended Complaint ¶ 86.  MKG is not an expeditor nor an affiliate of an expeditor.  More importantly, Plaintiff has not alleged that MKG is an expeditor or an affiliate of an expeditor. Therefore, MKG is excluded from COUNT III(A) in its totality.

### ii)   Count III(B) is Not Against MKG and INABATA's Motion to Dismiss was Granted

Like in Count III(A), Count III(B) is also not alleged against MKG.  The <u>sole</u> defendant against whom Count III(B) is alleged is INABATA.  As noted by this Court in the Order of March 29, 2018, INABATA's Motion to Dismiss was GRANTED and INABATA is no longer a party to this lawsuit.  More importantly, this Court dismissed the case on the basis of *forum non conveniens* and noted that the forum for the dispute between Plaintiff and INABATA does not recognize a RICO cause of action.  Therefore, there is no RICO cause of action against INABATA in Texas or Germany, where the convenient forum was found.

Notwithstanding the mootness of Count III(B), Plaintiff's own allegations related to the delivery of the panels excludes the possibility that MKG could be part of the alleged Enterprise. Plaintiff alleges, in Count III(B), that members of the defined Enterprise, "were engaged in the affixing and <u>trafficking</u> of goods bearing <u>counterfeit marks</u>."   Amended Complaint ¶ 98. (Underlining added).

### b)  MKG Did Not "Traffic"

Trafficking in counterfeit goods is prohibited by federal criminal statute, 18 U.S.C. § 2320. In a criminal prosecution for violation of that statute, the government has the burden to prove: "(1)

the defendant <u>trafficked</u> or attempted to traffic in goods or services; (2) such trafficking, or the attempt to traffic, was <u>intentional</u>; (3) the defendant used a <u>counterfeit mark</u> on or in connection with such goods or services; and (4) the <u>defendant knew that the mark so used was counterfeit</u>. *United States v. Hanafy*, 302 F.3d 485, 487 (5th Cir. 2002).  (Underlining added).

Here, Plaintiff's own allegations contradict the first element (trafficking).  Plaintiff has alleged that Plaintiff itself purchased and received the panels in question from other defendants and not from MKG.  Plaintiff alleges that "<u>Plaintiff purchased</u> over forty-six thousand (46,000) "RECOM Black Panther" solar panels from Defendant INABATA, for ultimate delivery and installation in a solar park near Puerto Sandino in Nicaragua."   Amended Complaint ¶ 3. (Underlining added).  Plaintiff alleges that the panels were shipped, "<u>to Plaintiff's designated facility in Nicaragua</u>."  Amended Complaint ¶ 9.  (Underlining added).  Plaintiff admits that the panels in question were delivered to Plaintiff: "Plaintiff obtained reports from two (2) independent authorities <u>confirming that the panels delivered to them</u> were not the proper *RECOM Black Panther panels*, . . . ." Amended Complaint ¶ 58. (Underlining added, italics in original).  Plaintiff admits that it discussed receipt <u>by Plaintiff</u> of the panels from parties other than MKG, "When Plaintiff asked for confirmation that "<u>Recom delivered [to] us</u> the Recom 270 W Monogrystalline Black Panther" panels, . . . ."  Amended Complaint ¶ 58, and Exhibit 10 to Amended Complaint, ECF No. 78-11. (Underlining added).  MKG, nor any employee or agent of MKG, is an author or recipient of the e-mail chain in Exhibit 10 to the Amended Complaint.  Plaintiff admits in its own allegations that MKG received the panels in question "<u>at the Project site</u>."   Amended Complaint ¶ 52.  (Underlining added).

In order to violate 18 U.S.C. 2320 (Trafficking in Counterfeit Goods or Services), a defendant must be proven to have "trafficked" in the goods as defined by statute.  If Plaintiff's

allegations are accepted as true, MKG cannot have satisfied the definition of "trafficked," which is as follows:

> [T]he term "traffic" means to transport, transfer, or otherwise dispose of, to another, for purposes of commercial advantage or private financial gain, or to make, import, export, obtain control of, or possess, with intent to so transport, transfer, or otherwise dispose of

18 U.S.C.A. § 2320

MKG was not the purchaser of the panels in question and did not buy or sell them. Plaintiff was the purchaser. Others sold the panels to Plaintiff.[2] MKG merely worked with the panels that Plaintiff provided. Plaintiff's own allegations make it clear that MKG could not have "trafficked" in the panels. Plaintiff provided Exhibit 8 to the Amended Complaint, an invoice. This invoice clearly shows that the "Ship-to Address" is to Plaintiff in Nicaragua, not to MKG. Amended Complaint, Exhibit 8, ECF No. 78-9. The Bill of Lading provided by Plaintiff as Exhibit 3 to the Amended Complaint also fails to show MKG as the recipient of the panels in question. Amended Complaint, Exhibit 3, ECF No. 78-4.

Even if MKG had sent or received counterfeit goods, no trafficking could be found because MKG was not the buyer or seller of the panels in question (and MKG is not and was never aware that goods were counterfeit, as alleged). The United States Court of Appeals for the Fourth Circuit found that the trafficking element of the statute had not been proven in a case where twelve pairs of counterfeit Eddie Bauer socks had been sent by a defendant <u>as samples</u> to a potential customer. *United States v. Habegger*, 370 F.3d 441, 444 (4th Cir. 2004). In that case, the court noted, "For purposes of § 2320, Congress provided that "the term 'traffic' means transport, transfer, or

---

[2] The Amended Contract between Plaintiff and MKG was specifically amended for the purpose of changing the purchaser of the panels from MKG to Plaintiff. "The Principal [Plaintiff] will purchase the panels directly from supplier." Amendment to Amended Contract ¶ 2.1.

otherwise dispose of, to another, *as consideration for anything of value,* or make or obtain control of with intent so to transport, transfer, or dispose of." *Id*. at 444.  (Italics in original).  In the instant case, MKG is not alleged to have been the purchaser of the allegedly counterfeit goods and is not alleged to have experienced any "commercial advantage or private financial gain" in the transaction between and among Plaintiff and others.

### c)   The Panels May Not Be Counterfeit

Plaintiff also failed to allege that the panels in question display counterfeit marks or that MKG knew that the goods were counterfeit, as required by statute.  Plaintiff's arguments related to the counterfeit marks are unclear.  There are three marks at issue in this case: SunEdison marks, RECOM marks and TÜV SÜD marks.  There seems to be no allegation by Plaintiff that the SunEdison marks are not genuine.  In fact, the entire Amended Complaint is based on a theory that the SunEdison marks are genuine.  RECOM cannot counterfeit its own mark because an owner (or even co-owner) of a mark cannot infringe on its own mark.  See *Piccari v. GTLO Prods., LLC*, 115 F. Supp. 3d 509 (E.D. Pa. 2015). Therefore, the only mark that could be alleged as counterfeit is the TÜV SÜD mark.

TÜV SÜD is not party to this lawsuit.  Plaintiff offers Exhibit 12 to the Amended Complaint ("Exhibit 12") as proof that some TÜV SÜD trademarks, possibly in Greece, are forged. Amended Complaint, Exhibit 12, ECF 78-13.  However, in Exhibit 12, TÜV SÜD addresses forgery of documents (which may or may not contain federally protected marks) regarding "Recom LTD, Greece" who is also not a party to this lawsuit.  It is unclear whether any of the panels in question have marks from TÜV SÜD.  It is further unclear whether any of the TÜV SÜD marks on the panels in question are spurious or counterfeit.  It is not alleged that MKG knew that the TÜV SÜD marks were counterfeit.  The letter in Exhibit 12 does not seem to address the panels in

question, but even if it were to have, it is dated August 29, 2017, long after the transaction with the panels in question took place.

MKG is not alleged to know, and currently does not, whether the TÜV SÜD, or any other marks, on the panels in question are spurious or counterfeit. Therefore, MKG is not alleged to have known (and could not have known) that such marks were spurious and counterfeit at the time Plaintiff received the panels in Nicaragua. Taking Plaintiff's own factual allegations as true, it is not possible that MKG trafficked in counterfeit goods because: 1) MKG did not traffic in the panels; 2) MKG is not alleged to have known whether (or not) there are any TÜV SÜD trademarks on the panels in question; and, 3) MKG has no knowledge regarding whether (or not) such marks are genuine.

### 2.  There is No Subject Matter Jurisdiction Arising from Diversity in this Case

Because federal question jurisdiction is not applicable to MKG, the only other basis for subject matter jurisdiction, as alleged in the Amended Complaint, is diversity of citizenship. Subject matter jurisdiction cannot be based on diversity in this case, because an alien is alone on one side of the controversy (Plaintiff) whereas both aliens and United States citizens are on the other side of the controversy.

In the Complaint, Plaintiff admitted that it is a citizen of a foreign country. Complaint ¶ 6. In the Amended Complaint, Plaintiff claims to be a citizen of every place in which its shareholders are citizens via a novel self-serving legal conclusion. Plaintiff submitted the Declaration of Christian Estrada, Esquire, a Nicaraguan attorney. Amended Complaint, Exhibit 6, ECF No. 78-7. Mr. Estrada, Esquire, has concluded that all Nicaraguan business entities with the name "S.A.," or *sociedad anónima*, should be treated by United States Circuit Courts like limited liability companies instead of corporations for purposes of determining diversity jurisdiction. Mr. Brent

Abadie, Esquire argues a similar legal conclusion where he too states that Plaintiff is a citizen of Louisiana, for jurisdictional purposes, based on the citizenship of himself, a shareholder.  See Verification & Declaration of Amended Complaint.  ECF No. 78-1.

a) **Legal Conclusions are Not Assumed to be Accurate**

These statements by Messrs. Estrada and Abadie, Esquires, are legal conclusions and not factual allegations and as such are not entitled to an assumption of accuracy.  When considering a motion to dismiss based on adequacy or lack of subject matter jurisdiction, the United States Supreme Court held that: "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

b) *Sociedad Anónima* **is an Exotic Creation of Civil Law**

The treatment of a foreign entity as either a United States corporation (or not) is a complicated and unsettled matter of law with the sole exception of the Puerto Rican entity known as a *sociedad en comandita*.  The Supreme Court of the United States has only once defined a foreign corporation to be equivalent to an American corporation for purposes of diversity jurisdiction.  *See People of Puerto Rico v. Russell & Co., Sucesores S. En. C.*, 288 U.S. 476, 53 S. Ct. 447, 77 L. Ed. 903 (1933).  The problem arising out of diversity treatment of a Puerto Rican *sociedad en comandita* is similar to that of a Nicaraguan *sociedad anónima*, as described by the Supreme Court: "The problem which [Russel] presented was that of fitting an exotic creation of the civil law, the sociedad en comandita, into a federal scheme which knew it not."  *United Steelworkers of Am., AFL-CIO v. R. H. Bouligny, Inc.*, 382 U.S. 145, 151 (1965).

Simply stated, a comparison between a civil law business entity and a United States corporation is far too complicated for a simple legal conclusion by one Nicaraguan attorney and

one American attorney.  Business entities in civil law countries (and even other common law countries) are not easily defined according to American entity categories.  As noted by the United States Court of Appeals for the Seventh Circuit, "Yet not even the United Kingdom has a business form that is exactly equal to that of a corporation. For example, it can be difficult to decide whether a business bearing the suffix "Ltd." is a corporation for the purpose of § 1332 or is more like a limited partnership, limited liability company, or business trust.  *White Pearl Inversiones S.A. (Uruguay) v. Cemusa, Inc.*, 647 F.3d 684, 686 (7th Cir. 2011).

The case at hand is similar to a diversity case decided by Judge Easterbrook of the United States Court of Appeals for the Seventh Circuit.  In Easterbrook's case, *White Pearl Inversiones S.A. (Uruguay) v. Cemusa, Inc.*, the issue was also the categorization of a *sociedad anónima*, although, not Nicaraguan. *Id.* That plaintiff, White Pearl Inversiones S.A. (Uruguay) was organized under the laws of Uruguay.  Judge Easterbrook discussed the corporation-like attributes of the Uruguayan *sociedad anónima* business organization:

> [A *sociedad anónima*] has many important attributes of corporate-ness [...]: it is a legal person with perpetual existence, governed indirectly by an elected board or administrator rather than by investors; it can issue tradeable shares, and investors are liable only for agreed capital contributions.

*Id*. at 687.

The first plaintiff in *White Pearl* was organized under the laws of Uruguay and was owned by only two shareholders, both of whom were citizens of Brazil.  The second plaintiff was a Florida corporation.  *Id.* at 686.  The defendant was a Delaware corporation with its principal place of business in Chicago.  After much discussion of the possible treatment of White Pearl Inversiones S.A. (Uruguay), as the equivalent of either an American corporation or a different business entity (like an LLC or partnership), the court determined that it need not make the determination at all,

"But we need not decide." *Id.* at 687.  Judge Easterbrook did not need to decide how to categorize a Uruguayan *sociedad anónima* because the outcome of the analysis, either way, was the same: As a corporation it was a citizen of Uruguay (an alien) and as an LLC it was a citizen of Brazil (an alien).

### c)  Plaintiff is an Alien Whether it is Considered a Corporation or an LLC

The same analysis is applicable in the instant case and the same result comes from the analysis.  As a corporation, Plaintiff is a citizen of Nicaragua and is an alien.  As an LLC, Plaintiff is a citizen of Mr. Nygart's country of origin, which is not the United States.  Because at least one of Plaintiff's shareholders is an alien, Plaintiff is an alien under the LLC analysis just as it is an alien under the corporation analysis.

Plaintiff has identified only two of its shareholders, Mr. Abadie and Mr. Nygard.  Even if Mr. Abadie and Mr. Nygard were the only two shareholders, only Mr. Abadie is alleged to be a citizen of the United States.  Plaintiff has stated, "Mr. Nygart is neither a citizen of Germany nor lives in Germany."  Amended Complaint, ¶ 27.  However, Plaintiff has not alleged that Mr. Nygart is a citizen of the United States and has not identified any United States state as his residence.  Plaintiff has argued for diversity jurisdiction based on the legal conclusion that all Nicaraguan *sociedad anónimas* (including Plaintiff) have their citizenship determined by the citizenship of each of their shareholders.  Therefore, Plaintiff must identify the citizenship of <u>all</u> of its shareholders.  This is especially true for Mr. Nygart, whom Plaintiff identifies as its "largest single shareholder."  Amended Complaint, ¶ 25.

In this case, in order for diversity to be complete, Plaintiff would have to be found by this Court <u>first</u> to be like an American limited liability company and not like a corporation.  <u>Second</u>, Plaintiff would have to be found to have one hundred percent American citizen shareholders.  This

means that Plaintiff's anonymous (anónima) shareholders would have to be identified, then the citizenship of each disclosed.  Third, zero of the shareholders could be citizens of the same state as any United States citizen Defendant (Michigan and California).  If Plaintiff had one thousand shareholders and even one of those shareholders were an alien, then Plaintiff would be treated as an alien for diversity purposes.  Likewise, if even one of those shareholders were a citizen of California, then Plaintiff would be treated as a citizen of California.  The same is true if even one were a citizen of Michigan.  An alien shareholder, like a California or Michigan shareholder (or any combination thereof) destroys diversity in this case.

Plaintiff has not alleged that it has zero alien shareholders. Plaintiff has also not alleged that none of its shareholders are citizens of Michigan or California.  Plaintiff has not made these allegations because at least one of its shareholders, Mr. Nygart, is an alien.  "If even one investor in an LP or LLC has the same citizenship as any party on the other side of the litigation, complete diversity is missing and the suit must be dismissed." *White Pearl* at 686.  Therefore, in this case, diversity is not complete and this case should be dismissed.

Furthermore, it should be noted that there is only one plaintiff in this case.  Plaintiff is alone on its side of the controversy; it is bringing suit in its own name.  Mr. Abadie is not a separate plaintiff.  So long as Plaintiff is alone on its side of the controversy, diversity will be incomplete whether it is treated as a limited liability company or a corporation.  As this Court has noted, "The complete diversity requirement is not met where both the plaintiff and one of the defendants is an alien." *Orellana v. Int'l Med. Grp., Inc.,* No. EP-18-CV-23-PRM, 2018 WL 674289, at *2 (W.D. Tex. Feb. 1, 2018).

The only sub-section of § 1332 that is applicable in cases where an alien is alone on one side of the controversy is § 1332(a)(2).  28 U.S.C.A. § 1332.  If all defendants were American

citizens, then § 1332(a)(2) might be applicable.   However, in this case, there are multiple defendants, some of whom are aliens and others who are United States citizens.  MKG is an alien. The mixture of United States citizens with aliens on the same side of the controversy destroys diversity, which is required to be complete.  "Diversity jurisdiction exists where the amount in controversy exceeds $75,000 and there is complete diversity of citizenship between the parties— in other words, every plaintiff must be diverse from every defendant. 28 U.S.C. § 1332(a)." *Barragan v. Gen. Motors LLC*, 112 F. Supp. 3d 544, 548 (W.D. Tex. 2015);  *see also Caterpillar Inc. v. Lewis,* 519 U.S. 61, 68 (1996).  The completeness of the diversity is specifically required with § 1332(a)(2).   "For the purposes of section 1332(a)(2) complete diversity is required."  *Chick Kam Choo v. Exxon Corp.*, 764 F.2d 1148, 1151 (5th Cir. 1985).

Therefore, this Court lacks subject matter jurisdiction over MKG because no federal question claim has been brought against MKG and diversity is not complete as required by 28 U.S.C. § 1332.

## C.    THIS COURT LACKS PERSONAL JURISDICTION OVER MKG

### 1.    Plaintiff Must Establish that this Court has Jurisdiction Over MKG

Plaintiff has the burden to prove the existence of personal jurisdiction over MKG.  "When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). See also *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994).  MKG is a German company with limited liability (*Gesellschaft mit beschraenkter Haftung)* with its headquarters in Germany.  Schade Declaration ¶ 3.  MKG is a nonresident alien. As such, Plaintiff must prove that MKG established "minimum contacts" with Texas so that if this Court were to assert jurisdiction over MKG, "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of*

*Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945).

Plaintiff cannot meet its burden because MKG has no contacts with Texas whatsoever. *See* Schade Declaration ¶¶ 4-10.  There is no allegation in the Complaint that MKG has committed any act by which it, "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).  In fact, MKG has no offices, no employees and no agents in Texas.  Schade Declaration ¶¶ 5-6.  MKG has never engaged in a project, whether large or small, in Texas.  Schade Declaration ¶ 4.  MKG does not design products or services specific to the Texas marketplace. Schade Declaration ¶ 5.  Plaintiff is not a citizen, domiciliary or resident of Texas.  It was not necessary for MKG to enter Texas to communicate with Plaintiff because Plaintiff was not in Texas.  Only one of the other named Defendants was in Texas, the remaining Defendants were in Germany or California.

Plaintiff alleges that it (not MKG) was the purchaser of solar panels at issue.  In the Amended Complaint, Plaintiff frequently makes allegations regarding activities engaged in by various undefined "Defendants."  Where MKG is specifically referenced, the activities or omissions alleged always occur outside of Texas.  For example, Plaintiff alleges that after arrival at Plaintiff's facility <u>in Nicaragua</u>, the solar panels were installed <u>in Nicaragua</u> by MKG.  Alleged deceptive communications are described with opaqueness in the Amended Complaint ¶ 30 as occurring while MKG was outside of Texas:

> Defendants, including INABATA and RECOM and MKG directed communications toward Texas which is where Flex and the panels were located.  […] The email between Defendants which were sent to FLEX in Texas related to […].

Amended Complaint ¶ 30

There is simply no allegation in the Complaint that an act or omission, specific to MKG,

occurred while MKG was in Texas.  On the contrary, all acts or omissions alleged, specific to

MKG, occurred while MKG was outside of Texas and not in Texas.  It is not even clear that

"FLEX," as defined in the Amended Complaint, was in Texas because the defined term, "FLEX,"

includes both Flextronics Defendants, one of whom was in California.

   **2.**  **"Communications" From MKG Sent By Unidentified Actor**

   The only allegations made by Plaintiff that are specific to MKG are unclear and are related

to "communications." Amended Complaint ¶ 30.  In the final sentence of ¶ 30, Plaintiff identified

"email <u>between</u> Defendants which <u>were sent</u> to FLEX in Texas."  (Underlining added). Plaintiff

has not alleged that MKG, specifically, sent any emails to Flextronics Automotive LLC, the Texas

entity.  First, Plaintiff used the passive voice and does not indicate who sent the emails.  Second,

Plaintiff defined the term, "FLEX" to include both Defendants, Flextronics International Inc.

(California) and Flextronics Automotive LLC ("collectively").  Amended Complaint ¶ 34.  Only

one of those entities was located in Texas.  The other was in California.  As a result of this

confusion, Plaintiff has not alleged that MKG, specifically, sent an email at all nor that the email

sent (by whomever) went to the Texas based Defendant, Flextronics Automotive LLC.  Even if

MKG had sent (or responded to) an email that was sent by someone else to Flextronics Automotive

LLC, that alone is not enough for jurisdiction.  A simple response to an email is not enough for

jurisdiction in Texas.  *See Bonner v. Triple-S Mgmt. Corp.,* 661 F. App'x 820 (5th Cir. 2016), *reh'g*

*denied* (Oct. 17, 2016).

**D.**  <u>**THE COURT SHOULD DISMISS COUNTS I AND II AGAINST MKG, FOR**</u>
   <u>**FAILURE TO STATE A CLAIM, PURSUANT TO RULE 12(b)(6)**</u>

   Plaintiff has failed to allege sufficient facts to show it is entitled to relief.  As a result, a

dismissal is appropriate under Rule 12(b)(6).  "Motions to dismiss for failure to state a claim are

appropriate when a defendant attacks the complaint because it fails to state a legally cognizable

claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Even if this Court assumes as true the facts alleged in the Amended Complaint, Plaintiff's alleged facts do not entitle it to relief. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ..., a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

Additionally, the Amended Complaint alleges "special matters" and must arise to the heightened pleading standard required by Fed. R. Civ. P. 9(b). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9. Plaintiff has failed to specify whether MKG, itself, made any representations that it knew or should have known were false and instead lumped MKG in with other Defendants into blanket statements. The United States Court of Appeals for the Fifth Circuit requires much more. "This Circuit's precedent interprets Rule 9(b) strictly, requiring the plaintiff to 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009).

In Count I, Plaintiff repeatedly refers to "each of the Defendants" making "false representations" with no specifics about which Defendant made the statements, how the statements were made, to whom they were made or when they were made. Because Plaintiff is alleging trafficking in counterfeit trademarks, the timing of the statements is very important. In Count II, Plaintiff makes allegations that all five Defendants, apparently in tandem, did various and sundry

nonspecific activities.  While unclear, these allegations are essentially legal conclusions couched

as facts.  As addressed herein above, legal conclusions are not entitled to the assumption of

accuracy.  Conclusory allegations, factual conclusions and legal conclusions, are not enough for a

complaint, like the Amended Complaint, to survive a motion to dismiss.  *See Coleman v. Lincoln*

*Par. Det. Ctr.*, 858 F.3d 307, 309 (5th Cir. 2017).  ([C]onclusory allegations or legal conclusions

masquerading as factual conclusions will not suffice to state a claim for relief).

## E.    MKG ALSO MOVES TO DISMISS THE AMENDED COMPLAINT UNDER THE DOCTRINE OF *FORUM NON CONVENIENS*

Plaintiff filed this lawsuit against MKG based on performance of a contract between MKG

and Plaintiff.  Count IV of the Amended Complaint seeks both equitable relief (unjust Enrichment)

and relief at law (Breach of Contract).  Plaintiff alleges that, "Defendant MKG breached it [sic]

agreement by failing to install *RECOM Black Panther Panels*."  Amended Complaint ¶ 107.

(Italics in original).  However, the Amended Contract has a choice of law and choice of forum

clause, which states, in relevant part:

> This Agreement shall be governed by and construed in accordance
> with the laws of the Kingdom Netherlands [sic] under exclusion of
> the conflict of law principles and of the United Nations Convention
> on Contracts for the International Sale of Goods – CISG.
>
> The court of jurisdiction for any dispute arising out of or relating to
> this Letter Agreement, or the validity thereof shall be the Kingdom
> of Netherlands [sic].

Amended Contract, ¶ 9.4-5.

This forum selection clause of the Amended Contract was negotiated between Plaintiff

and MKG <u>twice</u>.  In the original contract of April 30, 2016, the parties agreed to choose the laws

of Germany, but did not specify a forum.  However, during the negotiations of the amendment,

the choice of law was changed from German law to Netherlandish law. The forum with

jurisdiction was added.  That agreed forum is the Kingdom of the Netherlands.  In filing this lawsuit in Texas, Plaintiff has ignored its binding contractual duties to only file suit in the Kingdom of the Netherlands, "for any dispute arising out of or relating to" the Amended Contract.

This international forum selection clause is presumptively valid and requires the dismissal of a federal action, "in all but the most exceptional cases."  *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49 (2013).  Accordingly, this Court should enforce the voluntary decision by Plaintiff and MKG to litigate all disputes in the Kingdom of the Netherlands relating to the engineering, procurement and construction of a power plant in Puerto Sandino, Nicaragua.

### III. CONCLUSION

For the reasons stated herein, MKG GMBH MONTAGEBAU KARL GOEBEL respectfully requests that this Court grant its Motion to Dismiss and that Plaintiff's Amended Complaint be dismissed in its entirety, with prejudice.

Dated: May 14, 2018                              Respectfully submitted,


                                                 /s/ C. Kirby Happer
                                                 C. Kirby Happer, Esq.
                                                 Fla. Bar No. 126324
                                                 John L. Urban, Esq.
                                                 Fla. Bar No. 175307
                                                 **URBAN THIER & FEDERER, P.A.**
                                                 5782A South Semoran Boulevard
                                                 Orlando, Florida 32822
                                                 Tel.    407-245-8352
                                                 Fax.    407-245-8361
                                                 Email:  urban@urbanthier.com
                                                 Email:  happer@urbanthier.com
                                                 Counsel for Defendant
                                                 MKG GMBH MONTAGEBAU
                                                 KARL GOEBEL


                                                 David Mirazo, Esq.
                                                 **MOUNCE, GREEN, MYERS, SAFI,**
                                                 **PAXSON & GALATZAN P.C.**
                                                 100 N Stanton Street, Suite1000
                                                 El Paso, TX 79901
                                                 Tel.  915-532-2000
                                                 Fax. 915-541-1526
                                                 Email: mirazo@mgmsg.com



                         **<u>CERTIFICATE OF SERVICE</u>**

         I hereby certify that a copy of the foregoing document will be served on counsel of

record via the Electronic Case Filing system for the United States District Court for the Western

District of Texas on May 14, 2018.


                                                 /s/ C. Kirby Happer
                                                 C. Kirby Happer, Esq.